[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Defendant William G. Phillips appeals the judgment and sentence of the Shelby County Court of Common Pleas, from a jury verdict finding him guilty of one count of rape.
Defendant was charged with two counts of rape of Rachael C. Morrison, his granddaughter. Count one was alleged to have occurred on or about January 1, 1992 thru December 31, 1993, when Rachael would have been between six and eight years old. Count two was alleged to have occurred on or about July 1, 1996 thru July 1, 1997, when she would have been either ten or eleven.
After deliberation, the jury found defendant not guilty of the first count of rape but guilty of the second count. The court ordered that the defendant serve a stated prison term of eight years. From this judgment and sentence, defendant appeals and asserts the following assignments of error:
 1) The Court erred in failing to insure that the redaction of the material in State's exhibits 1 and 2 was sufficient so that the jury could not read the redacted material.
 2) The Court erred in allowing hearsay testimony of the alleged victim and in admitting State's Exhibit 3.
 3) The Court erred in allowing the testimony of William E. Brown, Ph.D. and in admitting Exhibit 2.
 4) The Court erred in allowing the testimony of Holly LeFevre and in admitting Exhibit 1.
 5) The Court erred in allowing the testimony and report of Dale Evans, M.D.
 6) The Court erred in allowing the testimony of Jane Kuhlman.
 7) Appellant was deprived of his rights to effective assistance of counsel by trial counsel's numerous erroneous acts and omissions, in contravention of the Sixth and Fourteenth Amendments to the United States Constitution, and Article One, Section Ten of the Ohio Constitution.
With regard to with defendant's seventh assignment of error, the Ohio Supreme Court has held that to reverse a conviction on the grounds of ineffective assistance:
 [f]irst, defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial.
 State v. Clemons (1998), 82 Ohio St.3d 438, 449-50, quotingStrickland v. Washington (1984), 466 U.S. 668, 687.
Prior to trial, the defense filed motions in limine to exclude testimony of two of the state's expert witnesses. The motions specifically targeted testimony as to the credibility of Rachael's story that the defense claimed should be prohibited under State v. Boston (1989), 46 Ohio St.3d 108. The motions also sought to exclude a page of Rachael's journal that was alleged to be hearsay outside any exception. The record indicates that no ruling was ever made on these motions, and only one, addressing Rachael's journal entry, was renewed at trial.
On appeal, defendant argues that his trial counsel did not preserve a proper record for appeal by failing to renew his motions in limine, failing to object to several alleged hearsay statements, failing to ascertain whether the jury improperly relied on the redacted statements and if so to move for a new trial, and failing to object to several challenged statements by the state's expert witnesses.
Since trial counsel is alleged to have been deficient in numerous areas addressed in other assignments of error, we will examine those other assignments with the Clemons standard in mind. Thus, in addition to the merit arguments alleged by defendant we will also review the other six assigned errors for any deficient performance of counsel that deprived defendant of a fair trial.
We will begin with defendant's sixth assignment of error. Defendant asserts that it was improper for the court to allow the testimony of Jane Kuhlman, an unlicensed counselor who had been working with Rachael and her family. Ms. Kuhlman testified that when she first began working with Rachael, Rachael had a "social dysfunction" and "felt different" than other children her age. Ms. Kuhlman testified that her work with Rachael focused on improving Rachael's self-esteem. She further stated that Rachael had "some of the characteristics of a sexually abused child and did not have some of the characteristics of a sexually abused child." However, the trial court precluded Ms. Kuhlman from making a formal diagnosis.
Ms. Kuhlman identified as "signs" of sexual abuse the fact that Rachael kept silent about the alleged abuse "for a long time," and also that in some family pictures Rachael displayed signs of "a hint of hypersexuality." Ms. Kuhlman also observed that Rachael had a "shame response" when she was asked about defendant. Ms. Kuhlman indicated that "these were patterns we see in a lot of sexually abused children."
Defendant contends that Ms. Kuhlman impermissibly offered testimony as to Rachael's veracity, and that she is not qualified to testify as an expert. As to defendant's first argument, a review of Ms. Kuhlman's testimony shows that the only time she offered an opinion as to Rachael's credibility was during cross-examination, and any error as to this testimony was invited by the defendant's line of questioning.
As to defendant's second argument, we believe that Ms. Kuhlman's direct testimony was proportional to her experience and training in mental health counseling. Her testimony primarily consisted of her specific observations of Rachael, rather than an expert opinion. While Ms. Kuhlman did testify that Rachael exhibited some of the same types of behaviors as many sexually abused children, she did not state an opinion that Rachael was sexually abused until she was prompted to do so by defense counsel. We therefore find no merit in this assignment of error.
We will now move to defendant's first assignment of error, in which he asserts that material that the court ordered redacted from state exhibits 1 and 2 could be read by the jury. The state responds that the material was marked out in such an obvious manner as to be clearly not for the jury's consideration, and that even if the redacted material was viewed by the jury that submission of the statements does not warrant reversal.
State exhibit 1 is a report prepared by Holly LeFevre, a social worker for the hospital who interviewed Rachael in preparation for a medical exam. This report recounts Rachael's story, briefly describes the medical observations and conclusions made as a result of the examination, and also contains the statement that "Rachel was credibly able to relate her victimization by her grandfather." The quoted statement was redacted with a black magic marker and the jury was able to review the report during its deliberations. However, examination of the exhibit reveals that the statement can easily be read through the magic marker ink.
State exhibit 2 is a letter from clinical psychologist Dr. William Brown to Shelby County Deputy Joanie Henry. Dr. Brown examined Rachael at Deputy Henry's request in an attempt to determine "the veracity of Miss Morrison's allegations." Dr. Brown's letter, which was given to the jury, contains the following statements pertaining to an unrelated incident allegedly involving the appellant and Rachael's sister Jessica:
 Rachel stated that Jessica admitted that on one occasion many years earlier Mr. Phillips had put his hand in Jessica's pants while she was sleeping. Jessica never again stayed overnight at her grandfather's house.
These statements were also redacted by a magic marker, but are easily able to be read.
It is clear that all of the material ordered redacted is inadmissible. The statement ordered redacted from exhibit 1 could too easily be construed as a judgment by Ms. LeFevre of Rachael's credibility. Such statements are inadmissible under State v.Boston (1989), 46 Ohio St.3d 108, paragraph one of the syllabus. Under Boston, it was error to submit Ms. LeFevre's statement that "Rachel was able to credibly relate her victimization by her grandfather" to the jury.
Moreover, the other imperfectly redacted material is hearsay that describes "other acts" evidence. The sentence in exhibit 2 (Dr. Brown's letter) that "Rachel stated that Jessica admitted that on one occasion many years earlier Mr. Phillips had put his had in Jessica's pants while she was sleeping," is an out of court statement by Jessica to Rachel, and one which can only be offered for the truth of the matter asserted. Evid.R. 801. It does not fit within any hearsay exception or exemption and is thus inadmissible. Evid.R. 803. Furthermore, the sentence describes an alleged prior bad act on the part of defendant. Other acts evidence is admissible only for limited purposes, and none of those purposes have been demonstrated by the state. Evid.R. 404(B).
We have little doubt that both statements, if directly presented to a jury, would constitute error, and the "other acts" evidence would unquestionably be reversible error. See State v.Allen (1987), 29 Ohio St.3d 53, 55; State v. Boston,46 Ohio St.3d at 128. Therefore, we believe that it indicates deficient performance by trial counsel and lack of care by the trial judge to have allowed the imperfectly redacted statements to get to the jury in this case.
Defendant's second assignment of error argues that some of Rachael's testimony and state exhibit 3 are inadmissible hearsay. Rachael testified that defendant had sexually abused her since she was in preschool. She stated that most of the intercourse occurred from kindergarten to third grade, when she and her younger brother George visited defendant at his home, generally every other weekend. She stated that defendant placed his penis in her vagina twice a night while she was at defendant's house, and that it "hurt." She also stated that it happened "once or twice" when she was in fourth and fifth grade, but that she "tried to push him off most of the time." Rachael stated that defendant did not ejaculate while he was inside her, but would withdraw and ejaculate onto the bed or the floor.
Rachael also said that defendant fondled her vagina repeatedly when she was at his house. She also testified that defendant had bought her a toy "every time," and that the reason she finally told about this abuse was that her sisters Jennie and Jessica teased her because defendant kept buying her toys. She also stated that defendant had asked her to perform oral sex on him but that she refused. She said that she was unsure when this incident occurred and had only recently remembered it, in part because of the counseling she was engaged in with her brother and mother. Rachael could not remember exactly when defendant had last sexually abused her, but was certain that it had been sometime in the first half of 1997.
Defendant argues that some of Rachael's testimony is inadmissible hearsay. Defendant's brief points to two specific passages in the transcript, only one of which was objected to by trial counsel:
 Q: Now, sometime before the fifth grade your mother had a conversation with Mr. Phillips about — about what he was doing to you, didn't she?
A: Yes, she did
MR. BALLATO: Objection, hearsay, your honor.
THE COURT: Overruled.
 MR. BERGHAUSEN: Why was that? Why did she talk to him?
THE WITNESS: Because my —
MR. BALLATO: Objection, speculative.
THE COURT: If you know.
MR. BERGHAUSEN: You can answer.
 THE WITNESS: Because, my brother, he went to my Aunt Linda's the night that I went to my Grandpa's. He wanted to go play with his cousins. And he was over there with my sisters, and he told my aunt that my grandpa had been doing this. So she — my mom — she told my mom and they came got me.
MR. BALLATO: Objection move to strike.
THE COURT: Overruled.
We agree with the state's argument that the substance of the conversation between Rachael's mother and defendant was never testified to, and thus that particular hearsay was never placed into the record. Moreover, the conversation between Rachael's brother and her aunt is not offered for the truth of the matter asserted, but rather to explain why Rachael's mother talked to defendant. It is thus not hearsay. Evid.R. 801. Defendant's objection to this colloquy is therefore misplaced.
The defendant also complains that Rachael was permitted, without objection, to testify that she told her best friend about the abuse. However, once again the state correctly points out that the contents of this conversation were never entered into evidence:
 Q: Now, at some point, Rachael, you — you did tell somebody, didn't you?
A: Yes, I did.
Q: Who did you tell?
A: My neighbor.
Q: Who's — who's that?
A: My best friend, Crystal.
Q: Okay. And how old is Crystal?
A: Twelve.
 Q: Okay. Somebody in you — somebody who's your own age?
A: Yes.
 Q: And how did — how did you tell her? What did — what did you tell her? Well, how did you tell her first of all?
 A: I just asked her what if you know somebody and — and that's all. I was upset because Jessie had been callin' me names. She — she wouldn't let me play with her.
Q: And Jessie's your sister?
 A: Yes. And she wouldn't let me do nothin' with her. I was all alone. So I invited my neighbor over to play; and I was upset and Crystal wondered why, so I told her.
Just what Rachael "told her" is never discussed. As such, there is no out of court statement offered, and therefore no hearsay. Evid.R. 801. However, as indicated in the above passage, when Rachael first disclosed her story to her friend Crystal, she showed Crystal a page from her journal:
June 4, 1997 R.L.M.
 I've never told anybody about this but it's hard for me to say this I hope to tell my parents about [sic] this Ever since I was a Little Girl My Grandpa well, he touches me and molests me. He said he would bye [sic] me everything I wanted if I didn't tell. My sisters don't understand they always say I'm a spoiled bitch. But that's not true. I guess I'm a hooker. I am so sick of this but, I guess that I should throw this page away but God keeps on saying that I should keep it. Love, Rachael L Morrison
Prior to trial, defendant's counsel had filed a motion in limine to exclude this document (state exhibit 3). At trial, defendant's counsel objected to the admission of the document as hearsay not within any exception. This objection was overruled, the document was admitted and the jury was permitted to examine it during deliberations. The state does not dispute that the journal entry is hearsay, but argues that the document is admissible as a present sense impression, an excited utterance, or a statement regarding the declarant's then existing mental, emotional or physical condition.
The following are not excluded by the hearsay rule, eventhough the declarant is available as a witness:
 (1) Present Sense Impression. A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness.
 (2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.
 (3) Then existing, mental, emotional, or physical condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of the declarant's will.
Evid.R. 803(1-3). Reviewing the state's arguments, it seems clear that Rachael's journal entry does not qualify as a present sense impression. The statements in the letter were not made while Rachael was contemporaneously perceiving the event or condition described. Cf. State v. Barnd (1993), 85 Ohio App.3d 254, 261. Rather, they were made some time after the events described allegedly took place, obviating the circumstantial guarantee of trustworthiness inherent in a contemporaneous description. Cox v.Oliver Machinery Co. (1987), 41 Ohio App.3d 28, 35-6. Nor is the statement an excited utterance. To be an excited utterance, a statement must be the product of reactive rather than reflective thinking. State v. Taylor (1993), 66 Ohio St.3d 295, 300. The character of the statement as a journal entry as well as the substance of the statement show that the statement could only be the product of reflection.
Whether the statement qualifies as an expression of Rachael's state of mind is less clear. Such "testimony can be properly admitted as long as it goes toward the future rather than the past [and] * * * the testimony cannot include an explanation as to why the declarant was of that particular state of mind." State v.Stewart (1991), 75 Ohio App.3d 141, 152, citing State v.Apanovitch (1987), 33 Ohio St.3d 19, 21. As such the only sentence which actually describes Rachael's state of mind ("I am so sick of this") is ambiguous. On the one hand, the statement tends towards the past rather than the future. On the other hand, it clearly connotes a reaction to an ongoing situation with future implications. We observe that the entire statement was entered into the journal within the time frame of the indicted charge for which defendant was convicted.
However, the rest of the document is merely an explanation as to why Rachael was of that particular state of mind, and thus does not appear to qualify under the exception. Nevertheless, even assuming it was error to admit the journal entry, we believe that error to have been harmless. Rachael testified as to the allegations which comprise the subject of the journal entry, and was subjected to full cross-examination on those allegations. Therefore, the admission of the journal entry was merely cumulative to Rachael's testimony. State v. Justice (1994),92 Ohio App.3d 740, 748-9. Defendant's second assignment of error is overruled.
Defendant's third assignment of error asserts that the court erred in allowing the testimony of Dr. Brown and the letter Dr. Brown wrote to the Shelby County Sheriff's Department (exhibit 2) into evidence. Dr. Brown's testimony described the symptoms of Child Sexual Abuse Accommodation Syndrome ("CSAAS") and how Rachael exhibited many of those symptoms.[1] As previously observed, the letter consists primarily of a recitation of Rachael's story and concludes with Dr. Brown's judgment that "Rachel [sic] Morrison was sexually abused."
We observe at the outset that the vast majority of Dr. Brown's letter and much of his testimony consists of statements by Rachael that are unquestionably hearsay. The state argues that the statements are admissible under Evid.R. 803(4), the hearsay exception for statements made for purposes of medical diagnosis or treatment. The state advances this argument despite the unquestioned fact that Rachael was sent to talk to Dr. Brown by the Sheriff's Department rather than doing so out of her own desire for diagnosis or treatment.
In State v. Dever (1992), 64 Ohio St.3d 401, the Ohio Supreme Court indicated that the motivational requirement of Evid.R. 803(4) should be relaxed for children of "tender years":
 the motivational element of Evid.R. 803(4) (often termed the "selfish interest" rationale) is not the only reason that statements for the purpose of medical diagnosis or treatment are more reliable that other hearsay statements. [Courts have] noted that there is a second reason for the medical diagnosis or treatment hearsay exception — that such statements are "reasonably relied upon by a physician in treatment or diagnosis." * * * Although we recognize that "professional reliance," standing alone, may not be as significant an indicator or reliability as "selfish interest," it must be afforded some weight.
 Id. at 411 (citations omitted). The state argues that underDever, Rachael's statements to Dr. Brown are admissible. However, we believe that Dever supports the exclusion of these statements, rather than their admission. Even if we agree that Rachael (a twelve year old) is a child of "tender years," Cf.State v. Burrell (1993), 89 Ohio App.3d 737, 742, we observe that Dr. Brown specifically testified (and the letter specifically states) that his primary purpose in interviewing Rachael was not diagnosis or treatment, but to determine the veracity of her story at the request of the Shelby County Sheriff's Department. Cf.State v. Vaughn (1995), 106 Ohio App.3d 775, 780; State v.Chappell (1994), 97 Ohio App.3d 515, 528-34. To expand the medical diagnosis exception to statements made to determine truthfulness goes well beyond the rule of Dever. Such an expansion would allow virtually any hearsay statement made to medical personnel to be admissible and would allow the hearsay exception to swallow a large chunk of the hearsay rule.
Accordingly, insofar as Dr. Brown's testimony and letter is a recitation of Rachael's story, it should have been excluded as hearsay outside any exception. Furthermore, we believe that as used in the letter and his testimony, Dr. Brown's "conclusion" that "Rachel [sic] Morrison was sexually abused" violates the prohibition against testimony as to the veracity of a child abuse victim. The letter makes no mention of why Dr. Brown reached the conclusion that Rachael had been abused. The letter consists of little more than Dr. Brown's introduction, which states he was requested to "give an opinion regarding the veracity of Ms. Morrison's allegations, a recitation of Rachael's story, and Dr. Brown's "conclusion." While we are certainly not qualified to raise doubts about the validity of Dr. Brown's conclusion, we do believe that under these circumstances allowing such a conclusion would undoubtedly lead a jury to believe that Dr. Brown reached an expert opinion about Rachael's veracity, in direct violation ofState v. Boston (1989), 46 Ohio St.3d 108, paragraph one of the syllabus. Thus, Dr. Brown's "conclusion" should have been excluded by the trial court. Moreover, we conclude that defendant's counsel's failure to renewed his liminal objection to Dr. Brown's testimony constituted deficient performance.
We now turn to defendant's fifth assignment of error, which asserts that the court should have excluded the testimony and report of Dr. Dale Evans, the emergency room physician who examined Rachael. Defendant's trial counsel had filed a pre-trial motion in limine to exclude Dr. Evans' opinion, as expressed in Rachael's emergency record:
 With the distance from the last contact to now I would not suspect a lot of traumatic appearance and I do not see that. She does look like there has been perhaps intercourse with some degree of the hymenal opening but it was difficult to assess with the degree of anxiety that she has.
Dr. Evans also noted that "it does look like that perhaps the hymen is notched to the right." The defendant's trial counsel failed to renew the motion in limine as to Dr. Evans' testimony, and instead utilized the report to impeach Dr. Evans on cross-examination.
On appeal, defendant argues that Dr. Evans should not have been allowed to testify to the results of an examination unless he had a "reasonable [medical] probability" that Rachael had suffered a penetration injury. However, in State v. D'Ambrosio (1993),67 Ohio St.3d 185, 191, the Supreme Court rejected the standard cited by defendant.
 While several decisions from this court indicate that speculative opinions by medical experts are inadmissible since they are based on possibilities and not probabilities * * * we believe the better practice, especially in criminal cases, is to let experts testify in terms of possibility.
(citations omitted).
Under D'Ambrosio, the mere fact that Dr. Evans' exam was inconclusive does not make it inadmissible. However, defendant has merely misapprehended the true nature of the problem with Dr. Evans' testimony. Evid.R. 702, which provides for expert witnesses, places strict admissibility limitations on the testimony of such witnesses. It reads, in relevant part:
A witness may testify as an expert if all of the followingapply:
* * *
 (C) * * *. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
* * *
 (3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.
Here, Dr. Evans admitted in the report and on several occasions in his testimony that the reason his evidence was inconclusive was that he was unable to conduct a thorough examination because Rachael was "quite anxious":
 Notching of the hymenal opening sometimes indicates that there has been an old laceration of the hymen, and it can also sometimes be helpful. In her particular case I commented that it very well could have just been due to the examination technique and not been a true notch related to laceration.
Dr. Evans stated in his report that "it was difficult [for him] to assess" the nature of Rachael's physical condition based on his "examination technique." We therefore conclude the procedure was not "conducted in a way that will yield an accurate result," and therefore fails to meet Evid.R. 702(C)(3)'s requirement for admissibility.
Accordingly, it was error for the court to have admitted Dr. Evans' report and testimony about his vaginal examination of Rachael, and his conclusions based on that exam. Moreover, although defendant's trial counsel may have made a tactical judgment not to renew the liminal objection to Dr. Evans' report and testimony, failure to object at trial to this highly prejudicial and inadmissible evidence shows deficient performance.
Defendant's fourth assignment of error argues that the testimony of Holly LeFevre and report generated by Ms. LeFevre (exhibit 1) should have been excluded. Ms. LeFevre interviewed Rachael after she had been sent by the Shelby County Sheriff's Office to Children's Medical Center for a medical exam. Ms. LeFevre is a social worker at the Center, and testified about the nature of her role in such situations:
 My job is to obtain the history of the allegations, being able to report to the parents and the child what will happen, what the exam will consist of, to let them know how — what the proper referrals are and then also to relate my history obtained from the child and the family to the physician so that we know what we need to do in terms of our medical exam.
Over defense objection, Ms. LeFevre testified that Rachael's "history" was that her (Rachael's) grandfather had been molesting her for some time, that the abuse had begun as fondling and had progressed to sexual intercourse. Rachael also told Ms. LeFevre that when Rachael and her younger brother George visited defendant that the three of them slept in the same bed, and that defendant would carry George into the living room and then return the bedroom to abuse her. Ms. LeFevre testified that Rachael had told her that George was probably aware of the abuse. Ms. LeFevre described Rachael as "very traumatized" during the interview and indicated that her response to Rachael was to "validat[e] her, validating the things that she had said to us, letting her know that she was a victim[.]"
Ms. LeFevre informed Dr. Evans of this history prior to his examination of Rachael, and Dr. Evans in turn informed Ms. LeFevre of the results of that physical examination. Over vigorous objections, Ms. LeFevre stated that based on the history she had obtained and her understanding of the results of Dr. Evans' examination that Rachael was "clearly a victim of sexual abuse."
Defendant argues that Rachael's story is hearsay as related by Ms. LeFevre. Defendant also argues that the admission of exhibit 1, Ms. LeFevre's report, was improper. Finally, defendant contends that Ms. LeFevre was not qualified to give an expert opinion, since that opinion rested in part on evidence gained from a physical examination.
We agree that Rachael's story as related by Ms. LeFevre is hearsay. However, in contrast to Dr. Brown's assignment, which was to determine the veracity of Rachael's story, both Ms. LeFevre's testimony and her report show that her primary job was to gather statements for the purpose of medical diagnosis and treatment. Furthermore, her testimony indicates that she explained to Rachael and her family why she was asking Rachael questions and how Rachael's answers would be used. We therefore believe that insofar as Ms. LeFevre's testimony and report are recitations of Rachael's story, both are admissible under Evid.R. 804(3). State v. Burrell, (1993), 89 Ohio App.3d 737, 742.
However, defendant also argues that over vigorous objection Ms. LeFevre was permitted to make a diagnosis of Rachael which exceeded the scope of her expert qualifications:
 Q: Based on what you've learned in these seminars from these physicians, what have you learned about a notched hymen as evidence of sexual abuse?
 MR. BALLATO: Objection, Your Honor. The witness is still not qualified to give this opinion.
THE COURT: Sustained.
(CONTINUED BY MR. BERGHAUSEN)
 Q: Did you independently as a social worker make an assessment that relates to this child?
A: Yes, I did.
Q: What is your assessment of — of Rachael Morrison?
 MR. BALLATO: Objection, Your Honor. Her assessment is irrelevant at this point.
THE COURT: Overruled.
 THE WITNESS: That this child was clearly a victim of sexual abuse.
 MR. BALLATO: Objection, Your Honor. It states an improper expert opinion.
THE COURT: Overruled.
(CONTINUED BY MR. BERGHAUSEN)
Q: And on what do you base that — that opinion?
A: On her history.
Q: Okay.
A: And the physical findings.
 Q: The physical findings meaning the — what was reported to you by the doctor [Dr. Evans]?
A: Correct.
We find it unnecessary to reach the issue of whether it was proper to allow a social worker to use medical evidence in reaching an expert conclusion. Because we have already concluded that the results of Dr. Evans' examination fail the test for admissibility under Evid.R. 702(C)(3), we conclude that the trial court's decisions to allow Ms. LeFevre to testify about the results of that examination and to state an expert opinion based partially on the results of that examination were erroneous.
In sum, defendant's first, third and fifth assignments of error are sustained. Defendant's second and sixth assignments of error are overruled. Defendant's fourth assignment of error is sustained in part and reversed in part, for the reasons stated above. As to defendant's seventh assignment of error, although we have determined that trial counsel was deficient in failing to renew liminal motions and object to certain prejudicial evidence, we cannot say that conduct of counsel alone caused defendant to be deprived of a fair trial. Accordingly, defendant's seventh assignment of error is overruled. However, based on the cumulative effect of the errors discussed under the first, third, fourth, sixth and seventh assignments of error, it is our conclusion that defendant was denied a fair trial. We therefore reverse the judgment and sentence of the Shelby County Court of Common Pleas and remand this case for further proceedings consistent with this opinion.
Judgment Reversed.
 HADLEY and BRYANT, JJ., concur.
[1] We are mindful of another Ohio court's decision that all testimony regarding Child Sexual Abuse Accommodation Syndrome is suspect and should not be admitted. See State v. Davis (1989),64 Ohio App.3d 334, 342. In effect, the Davis court concluded that testimony about Child Sexual Abuse Accommodation Syndrome does not meet the "reliable theory" requirement of Evid.R. 702(C)(1). We believe that the rationale for our decision makes it unnecessary for us to determine the admissibility of such evidence and expressly reserve judgment on this issue.