DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Defendant-Appellant Christopher Konkel appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms.
 I {¶ 2} On January 15, 2005, the Springfield Township Police Department received a report of a sexual assault on a minor. Detective Joseph Holsopple learned that the victim, an eight year old female named S.W., had been sexually assaulted by her brother-in-law, Konkel. Based on the information he received, Holsopple had Konkel brought to the local police station shortly before midnight. In the early morning hours of January 16, 2005, Holsopple interrogated Konkel for *Page 2 
roughly thirty-five minutes. During that time period, Konkel confessed orally and in writing. In his confessions, Konkel admitted that he had digitally penetrated S.W., licked her breasts, shown her a picture which contained naked women, and watched a pornographic DVD with her.
 {¶ 3} Based on Konkel's confessions and the statement given by S.W. which indicated that Konkel had performed oral sex on her, Konkel was indicted on the following charges: two counts of rape in violation of R.C. 2907.02(A)(1); two counts of gross sexual imposition in violation of R.C. 2907.05(A)(4); and one count of disseminating matter harmful to juveniles in violation of R.C. 2907.31(A) 1). Following his indictment, Konkel moved to suppress his confession, asserting that it was coerced. The trial court denied the motion and the matter proceeded to a jury trial.
 {¶ 4} At trial, the State presented evidence including the testimony of Detective Holsopple, S.W, BCI analysts, and the professionals who examined S.W. following the assault. In his defense, Konkel testified and offered the testimony of his wife and his mother. At the close of the case, the jury found Konkel guilty of each of the counts in the indictment. Konkel was then sentenced to an aggregate term of life in prison plus two years. Konkel has timely appealed his convictions, raising six assignments of error for review.
 II *Page 3 Assignment of Error Number One "MR. KONKEL WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL WHEN THE TRIAL COURT ALLOWED CATHY BECKWITH LAUBE, RICHARD STEINER AND MEGAN ROGERS TO TESTIFY AND BE TREATED AS EXPERTS. NONE WAS PROPERLY QUALIFIED BY THE COURT AND FOUND TO BE EXPERTS AS REQUIRED BY EVID.R. 702."
 {¶ 5} In his first assignment of error, Konkel argues that the trial court committed plain error when it permitted several of the State's witnesses to provide expert testimony. We disagree.
 {¶ 6} Pursuant to Crim.R. 52(B), a plain error that affects a substantial right may be noticed by an appellate court despite not having been brought to the attention of the trial court. The Ohio Supreme Court has explained that a reversible plain error requires that:
 "(1) there must be an error, i.e., a deviation from a legal rule; (2) the error must be plain, which means that it must be an obvious defect in the trial proceedings; and (3) the error must have affected substantial rights, which means that the trial court's error must have affected the outcome of the trial." (Emphasis and internal quotations omitted.) State v. Noling, 98 Ohio St.3d 44, 2002-Ohio-7044, at ¶ 62, quoting State v. Barnes (2002), 94 Ohio St.3d 21, 27.
"[N]otice of a plain error is taken with the utmost caution and only to prevent a manifest miscarriage of justice[.]" State v. Bray, 9th Dist. No. 03CA008241, 2004-Ohio-1067, at ¶ 12. Therefore, this Court will not reverse the trial court decision unless Appellant establishes that the trial court outcome would have clearly been different but for the alleged error. Id. *Page 4 
 {¶ 7} On appeal, Konkel has argued that Cathy Beckwith Laube, Dr. Richard Steiner, and Melinda Rogers each gave impermissible expert opinions. We separately review those claims.
 {¶ 8} In his brief, Konkel has not identified any of Laube's testimony that should have been excluded. Consequently, he has not met his burden on appeal with respect to this witness. App.R. 16(A)(7); Loc.R. 7(B)(7).
 {¶ 9} With respect to Dr. Steiner, Konkel asserts that the trial court committed plain error when it allowed Dr. Steiner to diagnose S.W. As it relates to Rogers, Konkel argues that the trial court erred when it permitted Rogers to give S.W.'s diagnosis and to opine that she was sexually abused. We find no plain error.
 {¶ 10} Presented with similar facts, the Ohio Supreme Court stated as follows:
 "While the state never formally tendered Dr. Scala-Barnett as an expert, during the course of questioning to qualify her as an expert, defense counsel never objected or challenged her qualifications * * *. Thus, Baston waived all but plain error.
 "The state's failure to qualify Dr. Scala-Barnett in more detail does not rise to the level of plain error. Her experience as a deputy coroner and her board certifications in pathology and forensic pathology qualify her to testify[.]" (Internal citations omitted.) State v. Baston (1999), 85 Ohio St.3d 418, 423.
Like the witness at issue in Baston, the qualifications of Dr. Steiner and Rogers went unchallenged. Furthermore, like the witness inBaston, both Dr. Steiner and Rogers detailed their substantial qualifications prior to giving any opinions. *Page 5 
 {¶ 11} On appeal, Konkel has not argued that the above witnesses' qualifications were insufficient to qualify them as experts. Instead, Konkel appears to argue that the trial court must make a formal statement on the record recognizing the witnesses as experts prior to receiving their opinions. Neither the rules of evidence, nor this Court's precedent demands such a finding. See State v. Eagle, 9th Dist. No. 04CA0003, 2004-Ohio-3255, at ¶ 18-22.
 {¶ 12} Our review of the record indicates that Dr. Steiner and Rogers qualify as expert witnesses under Evid.R. 702(B) which states that a witness may be qualified as an expert "by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony[.]" Each witness had an extensive education in the appropriate subject matter and lengthy practical experience in the fields of his/her testimony. Similarly, Rogers gave extensive testimony about her education and training before stating that she had diagnosed S.W. with post-traumatic stress disorder. As a result, we find no plain error in the admission of the experts' testimony.
 {¶ 13} Konkel's first assignment of error lacks merit. *Page 6 
 Assignment of Error Number Two "MR. KONKEL WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL WHEN THE TRIAL COURT ALLOWED MS. ROGERS TO TESTIFY [S.W.] WAS SEXUALLY ABUSED CONSTITUTING PREJUDICIAL ERROR. THERE WAS NO FOUNDATIONAL BASIS FOR MS. ROGERS['] OPINION IN VIOLATION OF EVID.R. 702(C)."
 {¶ 14} In his second assignment of error, Konkel alleges that the trial court committed plain error when it allowed Rogers to testify about the sand therapy she used in S.W.'s treatment. We disagree.
 {¶ 15} During her testimony, Rogers stated that she used sand tray therapy during her counseling with S.W. In this therapy, S.W. was asked to create her own "world" by placing various objects in a sand tray. Rogers then interpreted the meaning of the objects and their placement in the sand tray by asking S.W. questions about them. Konkel did not object to this testimony and we therefore review it under the plain error standard set forth above.
 {¶ 16} "In determining whether the opinion of an expert is reliable under Evid.R. 702(C), a trial court examines whether the expert's conclusion is based on scientifically valid principles and methods."Valentine v. Conrad, 110 Ohio St.3d 42, 2006-Ohio-3561, at ¶ 16, citingMiller v. Bike Athletic Co. (1998), 80 Ohio St.3d 607, paragraph one of the syllabus. Konkel asserts that sand tray therapy is inherently unreliable and inadmissible. He has supplied no law in support of his conclusion. Moreover, he has cited no authority to support his conclusory *Page 7 
assertion that this technique is unreliable. As such, he has not met his burden under the plain error standard.
 {¶ 17} This Court also notes that Konkel has made no attempt to demonstrate that the admission of this testimony altered the result of his trial. Rogers mentioned this therapy very briefly in her testimony. Rogers noted that the therapy confirmed her observations that S.W. was scared of Konkel. Assuming this testimony was introduced in error, we cannot say that the result of Konkel's trial would have been different but for its admission. Konkel's second assignment of error lacks merit.
 Assignment of Error Number Three "MR. KONKEL WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL WHEN THE TRIAL COURT ALLOWED MS. LAUBE, DR. STEINER, AND MS. ROGERS TO TESTIFY TO THE VERACITY OF [S.W.'S] STATEMENTS."
 {¶ 18} In his third assignment of error, Konkel asserts that the trial court erred when it allowed the State's witnesses to testify regarding the veracity of the victim. We find no prejudicial error.
 {¶ 19} Konkel again did not object to the allegedly improper testimony he cited in his brief. Consequently, we again review his claim under the plain error doctrine.
 {¶ 20} Once qualified, "[a]n expert witness's testimony that the behavior of an alleged child victim of sexual abuse is consistent with behavior observed in sexually abused children is admissible under the Ohio Rules of Evidence." State *Page 8 v. Stowers, 81 Ohio St.3d 260, 261. However, Konkel is correct in his assertion that experts may not testify that a sexual abuse victim is truthful. State v. Boston (1989), 46 Ohio St.3d 108, 128-29, overruled on other grounds. Moreover, this Court has found that where the sole foundation of an expert's opinion that a child has been sexually abused is an assessment of the child's veracity, admission of the opinion is error. State v. Burrell (1993), 89 Ohio App.3d 737, 746. We have also concluded, however, that the admission of such testimony does not mandate reversal. See State v. Kincaid (Oct. 18, 1995), 9th Dist. Nos. 94CA005942, 94CA005945, at *3.
 {¶ 21} Konkel asserts that the trial court committed error by permitting the State's experts to opine on S.W.'s veracity. We agree. Upon review, we find that the State's experts concluded that S.W. was a victim of sexual abuse based upon an assessment of S.W.'s veracity. The trial court, therefore, committed error in permitting that testimony. We find that any such error, however, did not affect the outcome of Konkel's trial.
 {¶ 22} In addition to the experts noted above, the State presented S.W.'s testimony. S.W. recounted in detail the events of the night in question. During her testimony, S.W. described the layout of Konkel's bedroom, the contents of a picture that included Konkel and numerous strippers, and several sex toys in Konkel's room. Further, S.W. accurately described the content of the *Page 9 
pornographic DVD which she alleged that Konkel had shown her on the night of the crime.
 {¶ 23} The State also presented physical evidence which supported S.W.'s version of evidence. Amylase, an enzyme found in high concentrations in saliva, was found on both S.W.'s breasts. This finding supported S.W.'s testimony that Konkel licked her breasts during that night. While Konkel asserts that the BCI analyst admitted that the saliva did not contain any DNA evidence, this does not undermine the conclusion that the amylase was most likely from saliva.
 {¶ 24} Finally, the State introduced evidence of Konkel's oral and written confessions. During those confessions, Konkel admitted to many of the crimes for which he was indicted. Consequently, we cannot say that the admission of the expert's opinions on whether S.W. was a victim of sexual assault affected the outcome of Konkel's trial. Konkel's third assignment of error lacks merit.
 Assignment of Error Number Four "MR. KONKEL WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL AND DUE PROCESS WHEN THE STATE WAS PERMITTED TO INTRODUCE IMPROPER EVIDENCE TO IMPEACH AND UNDERMINE THE CREDIBILITY AND CHARACTER OF KATIE KONKEL."
 {¶ 25} In his fourth assignment of error, Konkel alleges that the trial court erred when it permitted the State to question Katie Konkel about actions she had taken after the night of the crime. We disagree. *Page 10 
 {¶ 26} "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage (1987),31 Ohio St.3d 173, paragraph two of the syllabus. An appellate court will not disturb evidentiary rulings absent an abuse of discretion that produced a material prejudice to the aggrieved party. State v. Roberts,156 Ohio App.3d 352, 2004-Ohio-962, at ¶ 14. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621.
 {¶ 27} Konkel asserts that the State introduced evidence in violation of Evid.R. 608. Evid.R. 608(A) provides as follows:
 "The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise."
Specifically, Konkel argues that the State used extrinsic evidence to attack Katie's credibility. We disagree.
 {¶ 28} In its case-in-chief, the State presented evidence that Katie had spoken with S.W. in an attempt to influence her to drop the charges against Konkel. In addition, the State presented testimony that after initially complying *Page 11 
with the State's investigation, Katie became uncooperative as the matter proceeded.
 {¶ 29} Contrary to Konkel's assertion, the above evidence did not attack Katie's credibility. Rather, the State's evidence demonstrated Katie's bias in favor of her husband, Konkel. Evid.R. 616(A) permits this type of evidence to be used to impeach a witness and permits the introduction of evidence to show such bias. Specifically, Evid.R. 616(A) provides as follows: "Bias, prejudice, interest, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by extrinsic evidence." Consequently, the trial court did not err in permitting this line of questioning.
 {¶ 30} Konkel's fourth assignment of error lacks merit.
 Assignment of Error Number Five "MR. KONKEL WAS DENIED HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN THE PROSECUTOR ENGAGED IN MISCONDUCT THROUGHOUT THE TRIAL."
 {¶ 31} In his fifth assignment of error, Konkel alleges that the State committed prosecutorial misconduct. We find no error.
 {¶ 32} The Supreme Court of Ohio has limited the instances when a judgment may be reversed on grounds of prosecutorial misconduct. SeeState v. Lott (1990), 51 Ohio St.3d 160, 166. The analysis of cases alleging prosecutorial misconduct focuses on the fairness of the trial and not the culpability of the prosecutor. Id. A reviewing court is to consider the trial record as a whole and is *Page 12 
to ignore harmless errors "including most constitutional violations." Id., quoting United States v. Hasting (1983), 461 U.S. 499, 508-509. Accordingly, a judgment may only be reversed for prosecutorial misconduct when the improper conduct deprives the defendant of a fair trial. State v. Carter (1995), 72 Ohio St.3d 545, 557.
 {¶ 33} "In deciding whether a prosecutor's conduct rises to the level of prosecutorial misconduct, a reviewing court must determine if the remarks were improper, and, if so, whether they actually prejudiced the substantial rights of the defendant." State v. Overholt, 9th Dist. No. 02CA0108-M, 2003-Ohio-3500, at ¶ 47, citing State v. Smith (1984),14 Ohio St.3d 13, 14. "Isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." State v.Hill (1996), 75 Ohio St.3d 195, 204, citing Donnelly v.DeChristoforo (1974), 416 U.S. 637, 647. Furthermore, the appellant must show that there is a reasonable probability that but for the prosecutor's misconduct, the result of the proceeding would have been different. State v. Loza (1994), 71 Ohio St.3d 61, 78, overruled on other grounds.
 {¶ 34} In his brief, Konkel quotes at length from the State's opening statement, its cross-examination of Katie Konkel, its cross-examination of Konkel himself, and its closing argument. Included in these quotations are questions to which objections were sustained, statements to which objections were overruled, *Page 13 
and statements to which no objection was made. After quoting these statements, Konkel concludes that "[t]he above comments are improper."
 {¶ 35} Konkel does not state a basis for his conclusion that the numerous statements that he quotes were improper, nor does he identify any law in support of his conclusions. "If an argument exists that can support [Konkel's contentions], it is not this court's duty to root it out." Cardone v. Cardone (May 6, 1998), 9th Dist. Nos. 18349 18673, at *8. As Konkel has not articulated any rationale in support of his claim of misconduct, we will not craft an argument on his behalf.
 {¶ 36} Konkel's fifth assignment of error is overruled.
 Assignment of Error Number Six "MR[.] KONKEL WAS DENIED HIS CONSTITUTIONAL GUARANTEE OF EFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 37} In his final assignment of error, Konkel asserts that he was deprived of the effective assistance of counsel guaranteed by the Ohio and U.S. Constitutions. We disagree.
 {¶ 38} The Sixth Amendment of the United States Constitution guarantees a criminal defendant the effective assistance of counsel. SeeMcMann v. Richardson (1970), 397 U.S. 759, 771. To prove an ineffective assistance claim, Appellant must show that: (1) counsel's performance was deficient to the extent that "counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment [,]" and (2) "the deficient performance prejudiced the defense." Strickland v.Washington (1984), 466 U.S. 668, 687. To demonstrate prejudice, *Page 14 
the defendant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."Strickland, 466 U.S. at 691. Furthermore, the Court need not address both Strickland prongs if Appellant fails to prove either one. State v.Ray, 9th Dist. No. 22459, 2005-Ohio-4941, at ¶ 10. Accordingly, we begin with the prejudice prong.
 {¶ 39} In support of his argument, Konkel asserts that his trial counsel was ineffective for failing to object to the errors Konkel alleges were committed in his first five assignments of error. Finding either that the above trial court actions were not error or that such errors did not affect the outcome of Konkel's trial, we conclude that Konkel cannot establish prejudice in this claim.
 {¶ 40} Konkel's sixth assignment of error lacks merit.
 III {¶ 41} Konkel's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
 The Court finds that there were reasonable grounds for this appeal. *Page 15 
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
 SLABY, P. J. MOORE, J. CONCUR *Page 1