The STATE of Ohio, Appellee,

v.

BURRELL, Appellant.

[Cite as *State v. Burrell* (1993), 89 Ohio App.3d 737.]

Court of Appeals of Ohio,
Summit County.

No. 15772.

Decided Aug. 4, 1993.

738

*William D. Wellemeyer*, Assistant Prosecuting Attorney, for appellee.

*Lawrence J. Delino,* for appellant.

DICKINSON, Judge.

The defendant in this matter was found guilty by a jury of gross sexual imposition in violation of R.C. 2907.05(A)(1). He has appealed to this court and has argued two assignments of error: (1) that the trial court incorrectly admitted and refused to strike testimony of a pediatrician in which he opined that the alleged victim had been sexually abused when there was no physical evidence to support that opinion and it "was based entirely on the expert's belief in the credibility of the [alleged victim]," and (2) that the trial court incorrectly failed to charge the jury on the crime of sexual imposition as defined in R.C. 2907.06(A)(1), a lesser included offense of gross sexual imposition. Defendant's first assignment of error is sustained and this matter is reversed and remanded for further proceedings in conformity with this opinion. Defendant's second assignment of error is overruled as moot.

The alleged victim in this case, L, is a daughter of defendant's former wife, Willa Weaver. Defendant and Weaver were married from 1980 through 1983. They reconciled and again separated on a number of occasions following their divorce. In approximately January or February 1991, one of their reconciliations took place and defendant moved in with Weaver and her three daughters. L, who at the time of trial was fourteen years old, was the oldest of Weaver's

daughters. Defendant was the father of Weaver's second daughter, who at the time of trial was eleven years old.

On December 19, 1991, Weaver returned to the home unexpectedly and discovered defendant standing outside L's bedroom. Weaver was not satisfied with defendant's explanation of his presence outside L's room and she questioned L about her relationship with defendant. L alleged that defendant had been sexually molesting her for about one and a half years.

L testified at trial that the first incident of molestation occurred during the summer of 1990. She said that defendant had taken her and his daughter to his mother's home where they spent the night. She testified that, during the night, defendant entered the room in which she and defendant's daughter were sleeping in the same bed, "pulled down my panties and he was putting his finger inside my vagina."

L testified that over the next one and a half years, defendant molested her on numerous occasions. She testified that on more than ten occasions, defendant drove her to a location on Morgan Street and she remained in his car in a parking lot while he entered a building in which his brother-in-law worked. She said that when he returned to the car he "would try to force his penis inside of me." She said that he inserted his penis into her vagina "many times." She further testified that he would enter her bedroom on occasion, feel her legs, and masturbate.

Defendant denied L's allegations. He testified that he did not know why she would lie about him, that they had always had a good relationship, and that he was not guilty of the things that she alleged. The jury found defendant guilty of gross sexual imposition and he was sentenced to an indeterminate period of incarceration of not less than three years and not more than five years.

## I. DEFENDANT'S FIRST ASSIGNMENT OF ERROR

Defendant's first assignment of error is that the trial court incorrectly admitted and refused to strike testimony of a pediatrician, Dr. Michael Powell, who interviewed and examined L. Defendant did not object to Powell's testimony at the time it was given. At the close of all the evidence, however, defendant moved that his testimony be stricken. Inasmuch as this court need not consider an error a complaining party could have called, but did not call, to the trial court's attention at a time when it could have been avoided or corrected, before considering the merits of this assignment of error it is necessary for us to determine whether it was properly preserved. *State v. Wallace* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364.

■ At the time defendant moved to have Powell's testimony stricken, it would have still been possible for the trial court to instruct the jury not to consider that testimony. Accordingly, the alleged error was brought to the trial court's attention at a time when it could have been corrected. Further, the prosecutor conceded at oral argument that this issue had been properly raised in the trial court. It is appropriate, therefore, for this court to consider the merits of this assignment of error.

Powell testified that his pediatric studies included training in evaluation and examination of children believed to have been sexually or physically abused. Additionally, he had experience with child sexual abuse through working in emergency medicine, including doing interviews and "work ups" of alleged victims, and he had attended "several conferences through the years." As stated by Powell, "Actually I'm trained more in pediatric medicine but with a special interest in child abuse."

Powell examined L on January 7, 1992. His substantive testimony consisted of four parts: (1) a recitation of the history provided him by L; (2) a description of the physical examination he did of L; (3) his opinion that the physical examination provided no evidence of the alleged sexual abuse but was not inconsistent with abuse; and (4) his opinion that L had been sexually abused. The admission of each of the four parts of his testimony raised different issues and must be considered separately.

### A. Recitation of the History Provided by L

The history provided Powell by L included allegations that defendant had fondled and sucked on her breast, had inserted fingers into her vagina, had attempted to insert his penis into her vagina, and had performed cunnilingus on her. She estimated approximately forty separate incidents over a period of one and a half years. Powell testified:

"We also asked the further things happened and I asked her, she denied any kind of oral sex had taken place on him and she said quote, "He tried to make me but I said no," and she also denied any anal kind of contact and we also specifically asked her about ejaculation and did she understand what that meant and she said she did and she described what that meant and she denied that that had ever happened."

In *State v. Boston* (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220, the Ohio Supreme Court reviewed a number of evidentiary issues in the context of a child sexual abuse case. Among those issues was the admissibility of statements the alleged victim in that case, who was less than three years old, had made to a physician. The court initially considered whether her statements to the physician were admissible pursuant to Evid.R. 803(4) as "statements made for purposes of

medical diagnosis or treatment." The court found that, inasmuch as admissibility pursuant to that rule is based upon a belief that statements made to a physician for purposes of diagnosis or treatment are trustworthy because of the declarant's subjective motive to obtain accurate diagnosis or appropriate treatment, statements of children "of tender years" present difficulty. The court questioned whether statements made by children "of tender years" can properly be viewed as being based upon such motivation and suggested an alternative means of analyzing such statements. Subsequently, in *State v. Dever* (1992), 64 Ohio St.3d 401, 596 N.E.2d 436, the court revisited this area and modified its holding in *Boston* to the extent of ruling that, under certain circumstances, statements of children "of tender years" can be viewed as motivated by a desire for accurate diagnosis or appropriate treatment and, therefore, properly admissible pursuant to Evid.R. 803(4).

■ In this case it is neither necessary for us to determine whether L's statements to Powell fall within the circumstances discussed in *Dever* or are admissible pursuant to the alternative means of analysis utilized by the court in *Boston*. L was thirteen years old at the time Powell examined her and, accordingly, she was not a child "of tender years." See *Boston*, 46 Ohio St.3d at 120, 545 N.E.2d at 1232, fn. 11. That part of Powell's testimony that consisted of a recitation of the history provided him by L, therefore, was properly admitted pursuant to Evid.R. 803(4).

### B. Description of Powell's Physical Examination of L

■ Powell described his physical examination of L as follows:

"In this case, we did find that there were no specific unusual findings on the physical exam in that we didn't see any bruises or scars and specifically to the genitalia, her hymen was present, it had a small opening in it but, in terms of trying to do an internal exam, we were unable to insert a speculum because it appeared to be, you know, very small and also [L] was very uncomfortable and uncooperative with that exam."

Powell stated that the hymen was located within its normal variation, "anywhere from a quarter of an inch to an inch from the vaginal opening." He did not note where it was located within that variation.

This part of Powell's testimony revealed the underlying data for his opinion, discussed below, that the physical evidence did not show that L was sexually abused but also was not inconsistent with abuse. Disclosure of such underlying data was required by Evid.R. 705 as a foundation for his opinion. In doing so, Powell was testifying to matters of which he had personal knowledge within the meaning of Evid.R. 602. Further, his testimony was relevant within the meaning

of Evid.R. 401 because it had a "tendency to make the existence of [a] fact that [was] of consequence to the determination of the action more probable or less probable than it would [have been] without the evidence." This part of Powell's testimony was properly received by the trial court.

C.   Powell's Testimony that the Physical Examination Revealed No Evidence of the Alleged Sexual Abuse but was not Inconsistent with Abuse

Powell testified that his physical examination of L revealed no evidence of the alleged sexual abuse. He found no tearing of the hymen or other physical evidence supportive of L's allegations. He further testified, however, that the lack of physical evidence "could still be consistent with what she told me":

"[W]e find very frequently that there are children who are being touched or molested or attempts at penetration or rubbing in the area and you're not going to find any physical evidence of that necessarily."

He explained the lack of tearing of the hymen despite L's allegations of digital and penile penetration by saying that females, particularly if they are virginal, may not fully understand the anatomy "down there" and may interpret any attempt as penetration:

"When we're talking anatomically penetration into the vagina, you would have to go through the hymen, if that's what we're talking about, into—penetration into the vagina. If you ask a child, however, where were they penetrated, that does not—they do not make the distinction whether it's in the vagina or in front of the hymen or just sticking a finger down into the inner part of the labia. To them that is penetrating them and particularly if they're bearing down or trying to resist that action, they're going to interpret that that someone is trying to stick something into them or having—have, indeed, done that."

■   Evid.R. 702 permits a witness "qualified as an expert by knowledge, skill, experience, training, or education" to testify in the form of an opinion or otherwise if "scientific, technical, or other specialized knowledge will assist the trier of fact." There can be no doubt that Powell's training and experience qualified him to opine that his physical examination revealed no evidence of sexual abuse. Further, there can be little doubt that his experience qualified him to testify that the lack of physical evidence was not inconsistent with L having suffered sexual abuse. His knowledge, gained through years of working with hundreds of children who were alleged victims of sexual abuse, would assist the jury in understanding the apparent inconsistency between L's testimony and his physical examination of her. Most jurors would not be aware from their everyday experiences of the physical manifestations, or lack thereof, that would be expected from the type of sexual abuse to which L claimed she had been subjected. Powell's experience qualified him to explain why his finding of an

absence of physical evidence did not necessarily mean L had not suffered sexual abuse. The trial court did not err in admitting this part of Powell's testimony.

### D. Powell's Testimony that he Believed L was Sexually Abused

Powell's direct examination concluded with a statement that he believed L had been sexually assaulted and molested:

"Q.  * * * Based upon your training, education, experience, and history given to you and the physical examination conducted or made by you, do you have an opinion based upon a reasonable medical certainty whether [L] had been sexually molested or assaulted?

"A.  Yes, I believe she was sexually assaulted and molested."

On cross-examination, Powell testified that his conclusion that L had been assaulted and molested was based upon "her physical examination and the history that she told me":

"Q.  But the physical exam shows nothing?

"A.  That's still consistent with what she told me.

"Q.  You believe her is really what you're saying, isn't that, Doctor?  Isn't that what you're dealing with here?

"A.  That's correct.

"Q.  How is that a medical opinion?

"A.  Because I interview lots of children and I generally get some idea of what they're telling me, whether it's true or not."

Finally, on redirect examination, Powell expanded on why he believed L had been molested:

"A.  Because she looked at me directly in my eye and she gave me a history of what happened.  We asked her several times, we asked her several different ways of what happened to her and she was very consistent with what she told us."

Evid.R. 608(A) permits testimony regarding a witness's general character or reputation for truthfulness but not testimony regarding a witness's truthfulness on a particular occasion:

"The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness * * *."  See *State v. Rimmasch* (Utah 1989), 775 P.2d 388, 391, and the cases cited therein.

In *Boston, supra,* the Ohio Supreme Court held that "an expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant." *Id.* at syllabus.  Accordingly, if Powell had testified in his direct examination, as

he did on cross-examination, that he believed L was telling the truth when she told him she had been sexually abused, that testimony would not have been admissible.

The state has argued, however, that Powell did not testify on direct examination that L was telling the truth, but did so only on cross-examination in response to defendant's questioning. In effect, the state has argued that defendant "invited error" by asking Powell whether he believed L's story and, therefore, cannot complain about his response that he did or his further testimony on redirect examination about why he did.

■ "Error which the defendant himself has invited by eliciting an improper response from a witness * * * will usually be considered harmless." Louisell & Mueller, Federal Evidence (1977) Section 19, 103–104. "There is considerable risk, however, that this doctrine of invited error may be applied 'mechanically to inappropriate situations' * * *." *Id.* at 104, quoting Traynor, The Riddle of Harmless Error 76 (1970). It would be inappropriate to conclude that defendant invited the error about which he is here complaining.

■ As noted previously, Evid.R. 705 permits an expert to testify in terms of opinion, "after disclosure of the underlying facts or data" that form the foundation for that opinion. On direct examination, Powell testified that the foundation for his opinion that L had been sexually abused was the physical examination he conducted on her and the history she gave him, coupled with his training, education and experience. Defendant's cross-examination of him was appropriate to further explore that foundation. By that cross-examination, defendant first established that, in fact, Powell's physical examination did not aid him in concluding that L had been sexually abused. At that point, it was appropriate for defendant to seek clarification about whether the only foundation for Powell's opinion was, in fact, a subsidiary opinion that L had been truthful in relating her history to him. In this context, defendant did not elicit an improper response from Powell. Rather, he was properly exploring whether the opinion expressed by Powell on direct examination was supported by an appropriate foundation. The error was not contained in Powell's response on cross-examination. Rather, that response revealed that his opinion on direct examination lacked an appropriate foundation. Powell's testimony on cross-examination that what he was "really saying" on direct examination was that he believed L, brought this case within the prohibition found in *Boston* against an expert testifying "as to the expert's opinion of the veracity of the statements of a child declarant." In view of Powell's testimony on cross-examination, that part of his testimony on direct examination in which he opined that L had been sexually abused, should have been stricken in accord with *Boston.*

In *Boston,* the Ohio Supreme Court stated that it had "little difficulty in finding that the admission of [testimony that the alleged victim of sexual abuse was truthful] was not only improper—it was egregious, prejudicial and constitute[d] reversible error." *Boston,* 46 Ohio St.3d at 128, 545 N.E.2d at 1239–40. The trial in this case was a credibility contest between L and the defendant. Powell's testimony bolstered L's credibility to defendant's prejudice. The danger is that members of the jury too readily accepted Powell's evaluation as a "litmus test" of the alleged victim's credibility in place of making their own assessment. See *State v. Eastham* (1988), 39 Ohio St.3d 307, 312, 530 N.E.2d 409, 413 (H. Brown, J., concurring). Based upon the admission of Powell's testimony that he believed that L was a victim of sexual abuse, when he conceded that the sole foundation for that belief was his assessment of her veracity, defendant's first assignment of error is sustained.

## II. DEFENDANT'S SECOND ASSIGNMENT OF ERROR

Defendant's second assignment of error is that the trial court incorrectly failed to charge the jury on the crime of sexual imposition, a lesser included offense of gross sexual imposition. A trial court should instruct on a lesser included offense when warranted by the evidence. *State v. Kidder* (1987), 32 Ohio St.3d 279, 280, 513 N.E.2d 311, 313. Inasmuch as defendant's first assignment of error has been sustained, this matter must be reversed and remanded for possible retrial. The determination whether an instruction on sexual imposition should be given will have to be made based upon the evidence presented at any such retrial. Accordingly, defendant's second assignment of error is overruled as moot.

Defendant's first assignment of error is sustained and his second assignment of error is overruled as moot. This matter is reversed and remanded for further proceedings in conformance with this opinion.

*Judgment reversed*
*and cause remanded.*

COOK, P.J., and REECE, J., concur.