[Cite as *Hamilton Cty. Treasurer v. Scott*, 2022-Ohio-1467.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| TREASURER, HAMILTON COUNTY, OHIO, | : | APPEAL NO. C-200438<br>TRIAL NO. A-1602940 |
| Plaintiff-Appellant, | : | |
| vs. | : | *O P I N I O N.* |
| KENNETH SHANE SCOTT, | : | |
| Defendant-Appellee, | : | |
| and | : | |
| JANE DOE, UNKNOWN SPOUSE OF KENNETH SHANE SCOTT, et al., | : | |
| Defendants. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  May 4, 2022

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, *Michael Florez* and *Jesse K. Daley*, Assistant Prosecuting Attorneys, for Plaintiff-Appellant.

**ZAYAS, Judge.**

{¶1} Plaintiff-appellant Hamilton County Treasurer ("Treasurer") appeals from an entry of the Hamilton County Court of Common Pleas, which ordered the distribution of excess proceeds remaining after a judicial sale in a tax foreclosure action to defendant-appellee Kenneth Shane Scott. For the following reasons, we affirm the judgment of the trial court.

## Procedural and Factual Background

{¶2} On May 19, 2016, Treasurer initiated a tax foreclosure action against Scott, the unknown spouse of Scott, and Huntington Bank. Huntington Bank filed an answer, asserting an interest in the property "by way of certain mortgages." Neither Scott nor the unknown spouse answered the complaint.

{¶3} Following the entry of judgment in favor of Treasurer, the trial court ordered that the property be sold, and the property was sold on April 27, 2017. A decree of confirmation of the sale was entered by the trial court on May 11, 2017, and an entry distributing the sale proceeds was entered on June 2, 2017. The sale proceeds amounted to $12,700. Per the order of distribution, $1,026.70 was to be paid to the clerk of courts for court costs, $6,600.23 was to be paid to Treasurer for real estate taxes, and $5,073.07 was to be paid to the clerk of courts "to be held until further order of the court."

{¶4} The excess proceeds were deposited with the clerk of courts on June 29, 2017. Notice of the excess proceeds was issued via certified mail to Scott and the unknown spouse the following day. On August 18, 2017, the certified mail notice to the unknown spouse was returned unclaimed and another notice was issued via regular mail. On September 11, 2017, the certified mail notice to Scott was returned unclaimed and another notice was issued via regular mail.

2

{¶5} On August 3, 2020, Treasurer filed a motion for "entry of forfeiture and order of disbursement of residue and excess moneys from tax foreclosure" pursuant to R.C. 5721.20. At Treasurer's request, the motion was served on all parties via regular mail on August 4, 2020. A hearing on the motion was held before the magistrate on August 26, 2020. However, there is no transcript of this hearing in our record. The magistrate entered a decision on August 28, 2020. In the decision, the magistrate noted that Scott appeared at the hearing and requested that the funds be released to him. However, the magistrate found that Scott was notified of the excess funds via regular mail on September 11, 2017, and found that more than three years had passed with no claim made for the funds. Therefore, the magistrate granted Treasurer's motion and ordered that the excess funds be distributed to Treasurer.

{¶6} Scott filed objections to the magistrate's decision on September 10, 2020, arguing that the magistrate's decision was "contrary to applicable statute" and arguing that he did not receive notice of the excess funds. The cause came before the trial court on October 6, 2020, and October 27, 2020. Here on appeal, no transcript was included in the record of the initial proceeding before the court; however, the transcript of the proceeding on October 27, 2020 was included. At the start of this transcript, the trial court summarized what had occurred procedurally so far regarding the excess funds. In regard to the initial hearing, the transcript indicated that Scott obtained new counsel for the objections and indicated that, in addition to arguing that he did not receive notice of the excess funds, Scott argued that the applicable time period under the statute never started to run because the excess funds remained with the clerk and were never transferred to the treasury as required by R.C. 5121.20. Because the Treasurer and the court were not prepared to address this statutory argument, the cause was continued until October 27, 2020.

3

{¶7}  At the proceeding on October 27, 2020, Treasurer presented the testimony of two witnesses, the chief deputy treasurer from the Hamilton County Treasurer's office and the assistant chief deputy from the Hamilton County Clerk of Courts-Common Pleas Division, to address whether there was an understanding between the clerk's office and the treasurer's office about the process for holding such excess funds.  The chief deputy treasurer testified that the treasurer's office does not hold excess funds from sheriff's sales and does not have accounts set up to hold unclaimed funds.  He testified that the clerk of courts holds these funds on behalf of the treasurer pursuant to an oral agreement.  The assistant chief deputy for the clerk of courts also testified that there was an oral agreement for the clerk of courts to hold the excess funds from sheriff's sales and explained the process in Hamilton County for holding these funds.  First, the sheriff deposits the excess funds with the clerk of courts per the order of distribution.  Then, the clerk of courts holds these funds until further order from the court.  If someone comes in to claim the funds "within the statutory time limit," the clerk obtains an order from the court to distribute the money to the person or entity making the claim.  If the money is not claimed "within the statutory time," the prosecutor's office will present an entry to the clerk of courts to move the money "statutorily" to the county.

{¶8}  At the conclusion of the hearing, the trial court found that strict compliance with R.C. 5721.20 regarding where the excess funds were deposited was not necessary.  However, the trial court did not rely on R.C. 5721.20 in making its determination.  Rather, it went on to say that the question comes down to, "did Mr. Scott know about this money? His money."  The trial court ultimately granted Scott's objections to the magistrate's decision after noting that the court is a system of due process and finding that Scott did not receive the notice of the excess funds.

4

Accordingly, the trial court found that Scott was not on notice of the three-year period so his request "was not untimely." The trial court entered its decision on December 8, 2020, rejecting the magistrate's decision and finding that Scott made a timely demand for payment of the excess funds. Treasurer timely appealed the trial court's decision. No appellee brief was filed with this court.

## Law and Analysis

{¶9} The standard of review applicable to a trial court's decision to accept or reject the magistrate's decision is abuse of discretion. *See In re Estate of Zeak*, 10th Dist. Franklin No. 20A-310, 2022-Ohio-951, ¶ 13, citing *Lenoir v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 19AP-94, 2020-Ohio-387, ¶ 10. "An abuse of discretion occurs when a court's decision is unreasonable, arbitrary, or unconscionable." *Id.*, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "Questions of law are reviewed de novo on appeal." *Id.*, citing *Lenoir* at ¶ 10.

{¶10} This action was brought pursuant to R.C. Chapter 5721. Pursuant to R.C. 5721.18, the county prosecuting attorney may institute foreclosure proceedings, in the name of the county treasurer, to foreclose a lien of the state for delinquent taxes. Under R.C. 5721.19, once the court orders that a parcel be sold and the sale is confirmed, the proceeds of the sale are to be applied as follows:

> (1) The costs incurred in any proceeding filed against the parcel pursuant to R.C. 5721.18 of the Revised Code shall be paid first.

> (2) Following the payment required by division (D)(1) of this section, the part of the proceeds that is equal to five percent of the taxes and assessments due shall be deposited in equal shares into each of the delinquent tax and assessment collection funds created pursuant to

section 321.261 of the Revised Code. If a county land reutilization corporation is operating in the county, the board of county commissions, by resolution, may provide that an additional amount, not to exceed five per cent of such taxes and assessments, shall be credited to the county land reutilization corporation fund created by section 321.263 of the Revised Code to pay for the corporation's expenses. If such a resolution is in effect, the percentage of such taxes and assessments so provided shall be credited to that fund.

(3) Following the payment required by division (D)(2) of this section, the amount found due for taxes, assessments, charges, penalties, and interest shall be paid, including all taxes, assessments, charges, penalties, and interest payable subsequent to the delivery to the county prosecuting attorney of the delinquent land tax certificate or master list of delinquent tracts and prior to the transfer of the deed of the parcel to the purchaser following confirmation of sale. * * *.

R.C. 5721.19(D).

{¶11} 5721.20 provides:

Except in cases where the property is transferred without sale to a municipal corporation, township, county, community development organization, or county land reutilization corporation pursuant to the alternative redemption period procedures contained in section 323.78 of the revised code, any residue of moneys from the sale or foreclosure of lands remaining to the owner on the order of distribution, and unclaimed by such owner within sixty days from its receipt, shall be paid into the county treasury and shall be charged separately to the county

6

treasurer by the county auditor, in the name of the supposed owner. The treasurer shall retain such excess in the treasury for the proper owner of such lands upon which the foreclosure was had, and upon demand by such owner, within three years from the date of receipt, shall pay such excess to the owner. If the owner does not demand payment of the excess within three years, then the excess shall be forfeited to the delinquent tax and assessment collection fund created under section 323.261 of the Revised Code, or in counties that have established a county land reutilization corporation fund under section 323.263 of the Revised Code, to the county land reutilization corporation fund.

{¶12} Treasurer argues that that trial court erred in ordering that the excess funds be given to Scott because Scott did not make a timely demand for payment under R.C. 5721.20. In doing so, Treasurer argues that the money should have been automatically forfeited to the state, without further motion or notice, three years from the date of receipt. We note that the anticipated subject of R.C. 5721.20 is not excess proceeds left indefinitely with the clerk of courts. The statute anticipates that the excess proceeds will be left to the owner on the order of distribution and then transferred to the county treasury, in the name of the supposed owner, for the remaining time period if no demand for payment is made by the owner within 60 days of receipt. Had that happened here, the argument for automatic forfeiture might be stronger because the money would already be in the hands of the county treasury. However, because the funds remained with the clerk, automatic forfeiture could not occur here. The clerk of courts acts under the direction of the court. *See* R.C. 2303.26. Thus, to move the funds, a court order was required. Treasurer necessarily argues

7

that, despite the claimed noncompliance with the statute, the trial court was still required to order forfeiture of the funds to the state under R.C. 5721.20.

{¶13} We find that we need not answer this question. The trial court stated that strict compliance with the statute was not necessary, but this has not been challenged here on appeal. What the trial court ultimately determined, and what is now, in essence, being challenged here on appeal, is that due process required notice to Scott of the excess funds and Scott did not receive such notice. We limit our analysis to this issue being challenged by Treasurer here on appeal as it applies to this case. *See* App.R. 18(C); App.R. 12(A).

{¶14} Treasurer first argues that, because R.C. 5721.20 does not expressly require notice, the only notice to Scott that was required was notice of the foreclosure action. However, Treasurer does not seem to dispute that Scott was entitled to the excess funds prior to expiration of the three-year period following deposit of the excess money with the clerk. Accordingly, with this in mind, we find that the property interest in question here is no longer Scott's interest in the parcel subject to the foreclosure but is now Scott's property interest in the remaining moneys that Treasurer seems to concede that Scott was entitled to, had he made a timely demand.

{¶15} Due process requires, at a minimum, that judicial deprivations of property be preceded by notice and an opportunity to be heard appropriate to the case. *Cent. Trust Co., N.A. v. Jensen*, 67 Ohio St.3d 140, 142, 616 N.E.2d 873 (1993), citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Here, the trial court determined that due process required notice to Scott of the excess funds to which he was entitled before the funds could be forfeited to the state, and Scott did not receive such notice. Based on the specific facts of this case and

the arguments presented here on appeal, we agree with the trial court that due process required notice to Scott of the excess funds.

{¶16} To the extent that Treasurer appears to argue that the trial court erred in finding that Scott did not receive such notice, we note that the record before us only contains a partial transcript of the proceedings before the trial court. The sole transcript in the record covers only the second proceeding before the trial court on Scott's objections, where local county officials testified on behalf of the treasurer as to their process for holding excess funds remaining from judicial sales and where the trial court provided the rationale for its decision. Without transcripts of the other proceedings, we cannot ascertain what evidence was put before the court regarding notice. It is the appellant's burden to provide the necessary transcripts for appellate review. *See* App.R. 9; *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 400 N.E.2d 384 (1980). "When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." *Knapp* at 199. Thus, we must presume the regularity of the prior proceeding before the trial court and affirm the trial court's determination that Scott did not receive notice as we have no way of knowing what evidence was presented in that regard. Accordingly, Treasurer's sole assignment of error is overruled. We note again that our holding in this case is limited to the specific facts and circumstances before us. We make no determination beyond that.

## Conclusion

{¶17} Having overruled the sole assignment of error, we affirm the judgment of the trial court.

Judgment affirmed.

**MYERS, P.J.,** and **CROUSE, J.,** concur.

Please note:

The court has recorded its own entry this date.