**[Cite as *State v. Mincey*, 2023-Ohio-472.]**

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220061 |
| | | TRIAL NO.   B-1701856-A |
| Plaintiff-Appellee, | : | |
| | : | *O P I N I O N.* |
| vs. | : | |
| | : | |
| JATONE MINCEY, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: February 17, 2023


*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Judith Anton Lapp*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*The Law Office of John D. Hill* and *John D. Hill*, for Defendant-Appellant.

**CROUSE, Presiding Judge.**

{¶1}    After a jury trial, defendant-appellant Jatone Mincey was found guilty of the rape and sexual battery of his stepdaughter, H.S. In this appeal, Mincey argues in five assignments of error that the trial court made several evidentiary errors during the trial and that the cumulative effect of those alleged errors denied him a fair trial. For the reasons set forth below, we overrule Mincey's assignments of error and affirm the judgment of the trial court.

### I. Procedural History

{¶2}    Mincey was indicted in April 2017 on ten counts of rape, ten counts of sexual battery, and one count of gross sexual imposition. Following numerous delays, his case was tried to a jury in December 2021. The jury returned guilty verdicts on all ten counts of rape and ten counts of sexual battery and a not-guilty verdict on the gross-sexual-imposition count. The sexual-battery counts were merged with the rape counts, and Mincey was sentenced to 11 years in prison for each rape count. The trial court ordered the sentences to run consecutively, for a total prison sentence of 110 years. This appeal timely followed.

### II. Factual History

{¶3}    H.S. was 15 years old in late 2016. She lived with her mother, Detra Mincey ("Detra"), and Detra's husband, defendant-appellant Jatone Mincey. H.S. was a special-needs student, and she had been going to school unbathed and with her clothing unwashed. In December 2016, a classroom aide became concerned and alerted the Hamilton County Department of Job and Family Services ("JFS"). A JFS caseworker learned that the Mincey home did not have running water and on arrival noticed a very foul odor emanating from the house.

**{¶4}**     This was not JFS's first encounter with the Mincey household, as Detra had lost custody of H.S. previously.[1] Based on JFS records, the caseworker was concerned that H.S. was living in the home with Mincey. Given the choice between asking Mincey to leave the house or having H.S. removed, Detra agreed to have JFS place H.S. with Detra's sister, H.S.'s aunt, on an "out-of-home safety plan."

**{¶5}**     The caseworker learned from H.S.'s teachers that H.S. had reported being afraid to sleep at night because of Mincey. Suspecting possible sexual abuse, the caseworker referred H.S. to the Mayerson Center for Safe and Healthy Children ("Mayerson Center") for a forensic interview. At her first interview at the Mayerson Center in December 2016, H.S. denied that any abuse had occurred. However, in March 2017, H.S. told her aunt and her aunt's family that Mincey and Detra had sexually abused her.

**{¶6}**     H.S. was taken for a second interview at the Mayerson Center. During the interview, H.S. detailed a long history of sexual abuse at the hands of Mincey and Detra. The abuse that is the subject of the indictment started in January 2015. H.S. explained that "[t]oo many times to count," Detra and Mincey would engage in intercourse and other sexual activity in H.S.'s presence, and they would encourage or force H.S. to participate. When Detra was present, she would not permit Mincey to engage in vaginal intercourse with H.S., despite his requests to do so. Detra permitted or encouraged H.S. to engage in fellatio with Mincey, in addition to other sexual touching. When Detra was absent, either physically or because she was asleep or

---

[1] Detra's testimony at trial suggested that H.S. was removed because Mincey was violent toward Detra, and implied that he may have been violent toward H.S. However, the few JFS records in the record seem to indicate that H.S. was in JFS custody from 2013-2015 due to sexual-abuse allegations against Mincey, and that the return of custody to Detra was contingent on Detra not letting H.S. be around Mincey. The JFS file also suggests there was a court order requiring Mincey to stay away from H.S.

passed out from alcohol or drug use, Mincey would follow through on his stated desire to rape H.S. through vaginal intercourse.

**{¶7}** At trial, H.S. testified about her experience of being abused by Mincey and Detra. Detra also testified about her role in H.S.'s abuse.[2] H.S's aunt testified about the family's history and H.S.'s initial disclosure of the abuse. The jury heard testimony from the classroom aide who referred H.S. to JFS about her observations as to the changes in H.S.'s appearance and behavior during the relevant timeframe. The state presented testimony from Ohio Bureau of Criminal Investigation ("BCI") forensic experts about samples of stained pillows and carpeting taken from the Mincey home that contained DNA from Mincey and Detra, but not from H.S. The jury also heard from a BCI computer expert and a police detective regarding the web browsing history from Mincey's cell phone.

**{¶8}** Additionally, the state presented expert testimony from Rachel Bayer, the Mayerson Center forensic interviewer who conducted the March 2017 interview with H.S., and Dr. Kathi Makoroff, the Mayerson Center pediatrician who conducted a physical exam of H.S. in March 2017. Bayer testified about H.S.'s interview and explained why a sexual-assault victim might delay in disclosing the abuse. The jury was shown the video recording of the interview. Makoroff testified about H.S.'s physical exam, which was normal, and the reasons why a sexual-assault victim might have a normal physical exam after a delayed disclosure.

**{¶9}** Mincey called a single witness, the Mayerson Center forensic interviewer who conducted the first interview with H.S., during which H.S. had denied that any abuse had occurred. A video of that interview was shown to the jury.

---

[2] Detra was indicted on ten counts of complicity, in violation of R.C. 2923.02(A)(2). She ultimately pled guilty to one count of complicity and was sentenced to eight years in prison.

### III. Analysis

**{¶10}** Mincey raises five assignments of error for our consideration. First, Mincey argues that the trial court erred by permitting the state to present inadmissible other-acts evidence that Mincey allegedly committed one or more uncharged rape offenses against H.S. while they were outside of the state. Second, Mincey argues that the trial court improperly allowed the state to admit evidence of his pornography search history. Third, Mincey argues that the trial court erred by preventing him from inquiring into specific instances when H.S. may have fabricated allegations of sexual misconduct. Fourth, Mincey argues that the trial court erred by allowing the state's expert witnesses to vouch for H.S.'s credibility. And finally, Mincey argues that the cumulative effect of these errors violated his constitutional right to a fair trial. We address each of these arguments in turn.

### A. Other-Acts Evidence

**{¶11}** Mincey's first assignment of error is that the trial court erred by permitting the state to present evidence of uncharged, wrongful acts Mincey allegedly committed. Prior to trial, the state filed a notice of its intent to use evidence that Mincey had sexually abused H.S. in July 2016 while Mincey, Detra, and H.S. were in Memphis, Tennessee, and in nearby Tunica Resorts, Mississippi. This activity was not charged in this case and took place outside of Hamilton County.

**{¶12}** When reviewing the admission of other-acts evidence under Evid.R. 404(B), "we follow a three-step framework: (1) the evidence must be relevant to the particular purpose for which it is offered, Evid.R. 401; (2) the other acts must be offered for a legitimate purpose and not to show propensity to criminal conduct, Evid.R. 404(B); and (3) the danger of unfair prejudice must not substantially outweigh

the probative value of that evidence, Evid.R. 403." *State v. McDaniel*, 2021-Ohio-724, 168 N.E.3d 910, ¶ 17 (1st Dist.), citing *State v. Graham*, 164 Ohio St.3d 187, 2020-Ohio-6700, 172 N.E.3d 841, ¶ 72. The first two steps "pose legal questions that we review de novo." *Id.*, citing *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, ¶ 22. The third step constitutes a matter of judgment for the trial court, "which we review for abuse of discretion." *Id.*, citing *Hartman* at ¶ 22.

{¶13} In conducting this analysis, "courts must scrutinize the proponent's logic to determine exactly how the evidence connects to a proper purpose without relying on any intermediate improper-character inferences." *Hartman* at ¶ 23. In this analysis, "the first step is to determine whether the evidence in question is relevant * * * to a particular nonpropensity purpose." *State v. Armstead*, 1st Dist. Hamilton No. C-200417, 2021-Ohio-4000, ¶ 25. Second, that nonpropensity purpose must be one that "is actually in dispute." *Id.* Finally, the court must ensure that even where the proffered evidence is admissible under Evid.R. 404(B), the evidence must not be "more prejudicial than probative," in compliance with Evid.R. 403(A). *Hartman* at ¶ 29. Admission of other-acts evidence carries an inherent risk that the jury will nonetheless draw the " 'forbidden propensity inference,' " implicating exactly the risks that Evid.R. 403(A) seeks to mitigate. *Id.* at ¶ 33, quoting *United States v. Gomez,* 763 F.3d 845, 857 (7th Cir.2014). Therefore, "when such evidence is only slightly probative of a nonpropensity theory but has a high likelihood of unfairly prejudicing the defendant or confusing or misleading the jury, the evidence must be excluded." *Id.* at ¶ 33.

{¶14} In its notice of intent to use the other-acts evidence, the state argued that such evidence was admissible under Evid.R. 404(B) as evidence of "motive,

6

opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident and the Defendant's scheme, plan or system."

{¶15} Mincey argued in reply that such evidence is not probative of any purpose allowed under Evid.R. 404(B), and further that the probative value of the evidence "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or capable [sic] of misleading the jury."

{¶16} After a hearing on the matter, the trial court ruled that testimony regarding out-of-state sexual abuse would be admitted as evidence of Mincey's plan. The trial court issued a limiting instruction to the jury on the use of this other-acts evidence:

> If you find that the evidence of another crime is true and that the defendant committed it, you may consider that evidence only for the purpose of deciding whether it proves plan. You may consider evidence of other acts to determine whether it is linked to present offenses because the acts were carried out in furtherance of the same overall plan. Evidence of a plan or common design refers to a larger criminal * * * scheme of which the crime charged is only a portion. You may consider evidence of a plan if it supports one of the following possible conclusions: the occurrence of the act in issue; the identity of the person who committed the act; or the existence of the required mental state in the actor.

{¶17} Mincey argues that admitting evidence of the uncharged acts for the purpose of proving a plan is inappropriate. Mincey characterizes the state's argument as being that Mincey had a plan to repeatedly rape H.S., and the other-acts evidence

helps demonstrate this plan. Mincey argues that the implication that he "planned" to repeatedly rape H.S. is little more than propensity given another name, and propensity is exactly the purpose for which other-acts evidence is inadmissible.

{¶18} The state's primary argument on appeal is that the evidence was appropriate as evidence of an "inextricably intertwined" act. The state argues that the trip to Memphis took place during the indictment period, with alleged acts of rape before, during, and after the trip, and therefore the out-of-state acts were "contemporaneous with" the charged acts. Further, the state argues that without the evidence of the out-of-state acts, there would be an unexplained gap in the victim's testimony. Thus, the state contends that the evidence was necessary to give a complete narrative of the charged crimes.

{¶19} Other-acts evidence may be admitted when those acts form part of the "immediate background of the alleged act," as part of the res gestae of the charged crime. *State v. David*, 1st Dist. Hamilton No. C-210227, 2021-Ohio-4004, ¶ 16. There are occasions when the other-acts evidence is so inextricably intertwined with the charged conduct that its admission is necessary to give the complete picture of what occurred. For example, in *David*, the defendant, David, was charged with domestic violence against his long-term romantic partner, Cook. However, the trial court also allowed testimony that David had first attacked Cook's daughter and then attacked Cook while Cook attempted to shield her daughter from David's attack. *Id*. at ¶ 18. We held that such testimony about the daughter was not subject to exclusion under Evid.R. 404(B) because it was " 'inextricably intertwined' " with the charged conduct and was " 'necessary to give the complete picture of what occurred.' " *Id*. at ¶ 19, quoting *State v. Wilkinson*, 64 Ohio St.2d 308, 318, 415 N.E.2d 261 (1980). Cook could

8

not explain the sequence of events without including the background of David's attack on her daughter.

{¶20} In the case at bar, the sexual assault in Tennessee is not part of the "immediate background" nor is it "inextricably intertwined" with the charged conduct. The story of Mincey's repeated sexual abuse of H.S. is entirely coherent without the reference to the out-of-state acts. Those acts are not necessary to explain or place in context the charged conduct, nor do they form the "immediate background" of the charged activity. Where the charged conduct took place over the course of nearly two years, the absence of narrative covering a particular few days would not create any perceptible "gap" in H.S.'s testimony. The testimony about the out-of-state acts provides no additional context other than to suggest more of the same types of sexual assault that Mincey was charged with committing in Hamilton County.

{¶21} The state also argues that the evidence is part of an overall narrative showing Mincey's plan to deceive Detra, who permitted sexual touching of H.S. and oral sex, but would not allow Mincey to engage in vaginal intercourse with H.S. The state argues that the out-of-state acts form part of Mincey's plan to hide his vaginal intercourse with H.S. from Detra.

{¶22} This conception of "plan" does not comport with the Supreme Court's instruction on Evid.R. 404(B) in *Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651. The purpose of admitting evidence of a common scheme or plan is that such evidence "generally supports one of the following possible conclusions: '(1) the occurrence of the act in issue; (2) the identity of the person who committed the act; or (3) the existence of the required mental state in the actor.' " *Hartman* at ¶ 41, quoting Leonard, *The New Wigmore: Evidence of Other Misconduct and Similar Events*,

Section 9.1 (2d Ed.2019). Permissible other acts might include the theft of an instrumentality used in the charged crime or acts that combine to demonstrate motive. *Id.* at ¶ 42. The *Hartman* court stressed that, "plan evidence should show that the crime being charged and the other acts are part of the same grand design by the defendant." *Id.* at ¶ 46.

{¶23} The state has not alleged that or explained how Mincey had a "grand design." We therefore conclude that the evidence regarding the out-of-state sexual-abuse allegations was neither relevant to a nonpropensitity purpose, nor was it offered for a legitimate, nonpropensity purpose. Accordingly, it was error for the trial court to admit evidence regarding the out-of-state sexual-abuse allegations. However, we also conclude that this error was harmless.

{¶24} In evaluating the effect of evidence improperly admitted under Evid.R. 404(B), the court "must consider both the impact of the offending evidence on the verdict and the strength of the remaining evidence after the tainted evidence is removed from the record." *State v. English*, 1st Dist. Hamilton No. C-180697, 2020-Ohio-4682, ¶ 48, citing *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 33. "A 'strong case' may require reversal if the evidentiary error is combined with the prosecutor's emphasis on the improperly admitted evidence, resulting in 'blatant prejudice.' " *Id.*, quoting *Morris* at ¶ 31-32. If the remaining evidence, after excising the improperly admitted propensity evidence, is "overwhelming" then the improper admission of other-acts evidence may be deemed "harmless beyond a reasonable doubt." *Id.*

{¶25} The state made only one, brief reference to the uncharged, out-of-state acts in closing argument, referring to H.S.'s ability to testify about details of individual

instances when Mincey raped her, even though she didn't recall particular dates. The testimony regarding the out-of-state acts is relatively minor in the overall narrative of the witnesses. The remaining evidence presented stands on its own, without the need for any reference to the out-of-state acts. We conclude that the admission of the other-acts evidence was harmless error. Accordingly, we overrule Mincey's first assignment of error.

### B. Cell Phone Web-Search History

{¶26} Mincey's second assignment of error is that the trial court erred by permitting the state to present evidence of web-search history, which came from a cell phone that was seized from Mincey's home around the time of his arrest. A Springfield Township police detective testified that the web history on the cell phone showed a history of pornography searches including "father-daughter references," "threesome references of two females performing oral sex," "stepdad gets lucky," and "mother and daughter."

{¶27} Mincey argues that evidence of his pornography search activity is irrelevant to any matter in question and should have been excluded under Evid.R. 402. He claims that even if it is relevant, it should have been excluded for its potentially prejudicial impact under Evid.R. 403(A). Mincey does not argue that this evidence should have been excluded pursuant to Evid.R. 404(B).

{¶28} In response, the state argues that the purpose of the evidence was to show Mincey's state of mind. Mincey's defense at trial was that he did not do what H.S. and Detra accused him of. The state argues that the search history content was directly related to what Mincey was charged with doing to H.S., illustrated Mincey's state of mind, and was relevant to rebutting Mincey's claim that such conduct never happened.

{¶29} Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Evidence that is not relevant is inadmissible. Evid.R. 402. Even if the evidence is relevant, it is "not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A).

{¶30} Because admissibility of evidence is generally within the discretion of the trial court, this court reviews a trial court's decisions on evidentiary issues for an abuse of discretion. *In re A.K.*, 1st Dist. Hamilton No. C-210178, 2021-Ohio-4199, ¶ 17, citing *State v. Buck*, 2017-Ohio-8242, 100 N.E.3d 118, ¶ 109 (1st Dist.). "Abuse of discretion occurs when 'a court exercis[es] its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority.' " *State v. Austin*, 1st Dist. Hamilton Nos. C-210140 and C-210141, 2021-Ohio-3608, ¶ 5, quoting *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35.

{¶31} Here, there is a striking similarity between Mincey's conduct with H.S. and the pornography search history presented at trial. The evidence shows that the pornography was sought out and viewed by someone interested in sexual activities involving a man and his stepdaughter and between a mother and her daughter. Displaying an interest in pornography depicting such acts has at least some tendency to make it more probable that the person committed such closely similar acts. *Accord State v. Eichorn*, 5th Dist. Morrow No. 02 CA 953, 2003-Ohio-3415, ¶ 33 (holding that computer evidence of child pornography, clearly establishing that the viewer was interested in such subject matter, was relevant to the allegation that the defendant sexually abused his minor granddaughter); *State v. VanVoorhis*, 3d Dist. Logan No.

8-07-23, 2008-Ohio-3224, ¶ 73 (applying *Eichorn* to conclude that evidence of pornography that "exclusively involved men and boys engaged in both oral and anal intercourse" was admissible where the older, male defendant was charged with engaging in substantially similar conduct with a minor boy).

{**¶32**}  Mincey argues that any probative value of the web-search evidence is outweighed by its prejudicial effect. " 'Logically, all evidence presented by a prosecutor is prejudicial, but not all evidence unfairly prejudices a defendant.' " *State v. Lee*, 1st Dist. Hamilton No. C-160294, 2017-Ohio-7377, ¶ 12, quoting *State v. Wright*, 48 Ohio St.3d 5, 8, 548 N.E.2d 923 (1990). Relevant evidence that is otherwise admissible is "excluded only when the risk of unfair prejudice, confusion of the issues, or misleading the jury *substantially* outweighs its probative value." (Emphasis sic.) *Id.*, citing Evid.R. 403. "Unfair prejudice is that quality of evidence which might result in an improper basis for a jury decision. Consequently, if the evidence arouses the jury's emotional sympathies, evokes a sense of horror, or appeals to an instinct to punish, the evidence may be unfairly prejudicial." *State v. Crotts*, 104 Ohio St.3d 432, 2004-Ohio-6550, 820 N.E.2d 302, ¶ 24.

{**¶33**}  Here, the evidence was not presented to arouse the jury's emotions against Mincey. The web searches do not demonstrate an unusual sexual desire unrelated to the case at bar. They also do not invite the jury to conclude that if Mincey has one unusual and unrelated sexual interest, he may also be interested in obtaining sexual gratification from his own stepdaughter. Rather, the web searches are evidence that Mincey is specifically interested in sexual conduct between stepfather and stepdaughter and mother and daughter. As such, the potentially prejudicial effect of the evidence cannot be said to be unfair or misleading.

{¶34}  Mincey is correct that such evidence alone would not be sufficient to convict, but that is not the standard for relevance. Relevant evidence must only have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." Evid.R. 401. Based on the similarity of the acts underlying the criminal charge and the evidence presented of Mincey's pornography searches, it was not unwarranted for the trial court to conclude that such evidence has some tendency to make it more probable that Mincey committed the acts that H.S. alleged.

{¶35} The state's evidence of Mincey's pornography search history was relevant. The potential for unfair prejudice did not substantially outweigh the probative value of the evidence. Therefore, the trial court did not abuse its discretion in admitting this evidence. Mincey's second assignment of error is overruled.

### C. Inquiry into Prior Allegations of Sexual Misconduct

{¶36}  Mincey has maintained as his defense that he did not do the acts charged and that H.S. fabricated the allegations. As part of this defense, Mincey sought to present evidence at trial that H.S. had fabricated prior allegations of sexual misconduct against others in the past. In particular, Mincey sought to elicit testimony regarding allegations H.S. had made that other children had sexually abused her, which were disproven or that she later recanted. Mincey also sought to elicit testimony that H.S. had threatened a former foster mother that she would fabricate sexual-abuse allegations against the foster mother's husband and other foster children in order to have them removed from the home. Mincey argues that at trial he was only permitted to explore H.S.'s character for truthfulness to the extent that she had, from time to time, told "little, white lies," as is common in children.

14

**{¶37}** We review the trial court's decisions on the admissibility of evidence for an abuse of discretion. *See State v. Netherland*, 132 Ohio App.3d 252, 262, 724 N.E.2d 1182 (1st Dist.1999), citing *State v. Boggs*, 63 Ohio St.3d 418, 421, 588 N.E.2d 813 (1992).

**{¶38}** Evidence relating to false allegations of sexual abuse implicate both the rape-shield statute, R.C. 2907.02(D), and evidentiary rules pertaining to the character of a witness under Evid.R. 608(B). The Supreme Court analyzed the relationship between the rape-shield statute and Evid.R. 608(B) in *State v. Boggs*, 63 Ohio St.3d 418, 588 N.E.2d 813 (1992). "False accusations, where no sexual activity is involved, do not fall within the rape shield statute." *Boggs* at 421.

**{¶39}** Where the defendant seeks to cross-examine a victim on prior, false allegations, the court must hold an in-camera hearing to determine whether such testimony is protected by the rape-shield statute. *Id.* at 421-422. "If the trial court determined that the accusations were entirely false (that is, that no sexual activity had been involved) the trial court would then be permitted to exercise its discretion in determining whether to permit defense counsel to proceed with cross-examination of the alleged victim." *Id.* at 421. However, where the trial court ascertains that "any sexual activity took place, i.e., an actual rape or consensual sex * * * the rape shield statute prohibits any further inquiry into this area." *Id.* at 423. Extrinsic evidence of prior, false allegations is inadmissible since it is wholly collateral to any issue in the trial. *Id.* at 422.

**{¶40}** Mincey asserts that records he obtained from JFS support his claim that H.S. has a history of fabricating allegations of sexual abuse and that he was entitled to cross-examine H.S. as to specific instances of fabricated allegations. Mincey claims

15

that although the relevant JFS records were proffered in the trial court, not all those records were included in the record on appeal.[3]

{¶41} It is unclear whether the court held an in-camera hearing or just conducted an in-camera review of the records. Nevertheless, sidebar discussions by the parties documented in the trial transcript indicate that the court conducted some sort of review and ruled that the specific instances of conduct that Mincey sought to explore on cross-examination of H.S. were protected by the rape-shield statute. *Id.*

{¶42} It is emphatically the duty of the appellant to ensure that the record on appeal is complete and that any material necessary to the appellant's assignment of error is contained within it. App.R. 9; *Treasurer v. Scott*, 1st Dist. Hamilton No. C-200438, 2022-Ohio-1467, ¶ 16. Where portions of the record necessary to the resolution of the assigned error are missing, the appellate court has no choice but to presume regularity of the lower court's proceedings. *Scott* at ¶ 16, citing *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 400 N.E.2d 384 (1980).

{¶43} Because portions of the record necessary to the resolution of this assignment of error are missing, we must presume that the trial court followed the proper procedure and reasonably concluded that exclusion of the evidence was appropriate. Mincey's third assignment of error is overruled.

### D. Improper Expert Testimony

{¶44} In his fourth assignment of error, Mincey argues that expert witnesses from the Mayerson Center were improperly permitted to vouch for H.S.'s credibility in her allegations against Mincey. Mincey argues that Rachel Bayer, a social worker and forensic interviewer, and Dr. Kathi Makoroff, a pediatrician and the medical

---

[3] Appellate counsel did not move to supplement the record on appeal.

director of the Mayerson Center, exceeded the proper bounds of expert testimony by offering their opinions that H.S. had, in fact, been the victim of sexual abuse based solely on statements made by H.S. at her interview. In effect, Mincey claims that the Mayerson Center experts testified that H.S. had been abused because they believed her statements that she had been abused.

{¶45} "We review the admission of expert testimony for an abuse of discretion." *State v. Svoboda*, 2021-Ohio-4197, 180 N.E.3d 1277, ¶ 89 (1st Dist.), citing *State v. Howard*, 1st Dist. Hamilton Nos. C-190451 and C-190452, 2020-Ohio-5072, ¶ 23.

{¶46} We have previously held that "[a]n expert may not offer an opinion as to the truth of the child's statements. But testimony which provides 'additional support for the truth of the facts testified to by the child, or which assists the fact finder in assessing the child's veracity,' is permitted." *Svoboda* at ¶ 93, quoting *State v. Stowers*, 81 Ohio St.3d 260, 263, 690 N.E.2d 881 (1998). Expert testimony is permissible to explain why a normal physical exam is not inconsistent with a history of sexual abuse or what behaviors are consistent with such abuse. *Id.* at ¶ 93.

{¶47} The portions of Bayer's testimony and report to which Mincey objects state that "This information *is consistent with* inappropriate sexual contact and concerning for abuse." (Emphasis added.) Bayer further testified that her opinion "was based on the information that was provided by [H.S.], that inappropriate sexual contact had occurred." Bayer did not state that she believed that abuse had occurred, nor did she testify that she believed H.S. was telling the truth. This portion of Bayer's testimony is appropriate, and therefore it was not an abuse of discretion for the trial court to admit this testimony.

17

{¶48} Mincey also argues that Bayer stated her opinion that "children never falsely allege sexual abuse." Such an opinion, if offered, would be cause for concern. However, Bayer did not make that precise claim. Rather, she offered the following testimony on cross-examination:

Q: Okay. In your experience, okay, have you found that sometimes children make up stories?

A: Not – not in my experience.

Q: So you've never had any child make up a story of abuse?

A: My role is to collect information. I'm not part of anything that occurs afterward unless I'm asked to testify. So I don't get involved in ongoing investigations or what happens after that fact. We go based on what the kids tell us during the interview.

Q: Do you know – do you think children make up stories of abuse?

A: It's not – I don't believe children lie about abuse.

Q: Not at all?

A: Not typically, no.

Q: Okay. And you don't think they can be [led] by adults to make up claims?

A: I'm sure that could happen.

Q: Ok. Do you think they exaggerate things that happen?

A: Possibly.

Q: Do you think they say things that they have fantasies about?

A: Possibly.

Q: Okay. Do you think they would say something so that they could stay

with a certain relative or family member?

A: I think anything's possible.

In context of this colloquy, it can hardly be said that Bayer's testimony reflected an opinion that "children never falsely allege sexual abuse." Further, any potential harm done by Bayer's general statements that she believes children do not typically lie about abuse was immediately addressed through effective cross-examination. It was not an abuse of discretion for the trial court to admit this testimony.

**{¶49}** For similar reasons, Mincey objects to Makoroff's testimony regarding her medical report. On direct examination, Makoroff testified from her report:

So then I state based on this evaluation, so that is not just my medical examination, I believe that there's a high likelihood that abuse has occurred. This diagnosis is made because of the history that [H.S.] provided. And so that included the history as part of the forensic interview that had – that was performed on the same day and the history that was – that [H.S.] provided.

So that history coupled with the normal exam, and knowing that the vast majority of children after a history of sexual abuse, especially in [H.S.]'s case when the abuse was not acute. It hadn't just – the last event hadn't just occurred, will have a normal exam. Putting the whole evaluation together and knowing that the normal exam doesn't mean that sexual abuse didn't occur, my impression was that there was a high likelihood that abuse had occurred.

**{¶50}** On cross-examination, Mincey elicited further detail on Makoroff's findings:

Q: Okay. And so then when you make your conclusion of a high likelihood that abuse has occurred, this is not based on objective evidence?

A: It's not – I said it wasn't based on examination, but it's based on the forensic interview. Which I would say is, you know, this – you know, I don't know if I would call – I don't know how I would qualify it, but it is based on something.

Q: It's based on [H.S.]'s statement to Rachel Bayer?

A: Yes.

{¶51} Admissibility of a medical opinion that abuse has occurred "turns on the foundation of the expert's opinion." *State v. Britta*, 11th Dist. Lake No. 2009-L-017, 2010-Ohio-971, ¶ 69. To be admissible, the opinion must be founded on something more than merely the unsupported allegations of the child-victim. *Id. Accord State v. Knight*, 8th Dist. Cuyahoga No. 87737, 2006-Ohio-6437, ¶ 32; *State v. Burrell*, 89 Ohio App.3d 737, 746, 627 N.E.2d 605 (9th Dist.1993). Such a finding does not require particular physical evidence, but may rely on the expert's observation of the child's demeanor or other indicia that, based upon the expert's training and experience, tend to show that abuse has occurred. *Britta* at ¶ 69, 76 (permitting expert testimony based on training and experience, interview and physical exam of child-victim, and behavioral history provided by child's mother). *Accord State v. Williams*, 5th Dist. Stark No. 2021CA00081, 2022-Ohio-2245, ¶ 95 (permitting expert testimony based on education and experience, child-victim's statements, and onset of bedwetting and dysuria). Expert testimony based on no more than the child's statements is "tantamount to permitting the expert to testify as to the child's veracity." *Britta* at ¶ 70,

quoting *State v. Johnson*, 8th Dist. Cuyahoga No. 90961, 2008-Ohio-6657, ¶ 32. *Accord Knight* at ¶ 32; *Burrell* at 746.

{**¶52**}  Makoroff's testimony was not limited to a finding that H.S.'s evaluation was *consistent with* abuse but rather that Makoroff personally believed that there was a "high likelihood" that the abuse actually occurred. Makoroff testified that her opinion was based on H.S.'s normal physical exam and H.S.'s Mayerson interview with Bayer. Thus, it is difficult to interpret Makoroff's testimony as anything other than a statement of Makoroff's personal belief in the veracity of H.S.'s statement. This goes beyond merely contextualizing why an abuse victim might have a normal physical exam or why she might be reluctant to report the abuse and constitutes improper vouching for H.S.'s credibility.

{**¶53**}  The harmless-error analysis discussed above likewise applies here. The state did not mention Makoroff's testimony at all in closing. In light of the other evidence against Mincey and the lack of emphasis the state placed on this testimony, the effect of Makoroff's impermissible vouching for H.S.'s credibility is minimal. Therefore, the error was harmless. *See State v. Lukacs*, 188 Ohio App.3d 597, 2010-Ohio-2364, 936 N.E.2d 506, ¶ 33 (1st Dist.). Accordingly, we overrule Mincey's fourth assignment of error.

### E. Cumulative Error

{**¶54**}  In his fifth and final assignment of error, Mincey argues that the cumulative effect of the multiple assigned errors denied him a fair trial. Under the doctrine of cumulative error, numerous instances of trial court error that are individually harmless may, through their cumulative effect, deprive the defendant of the constitutional right to a fair trial. *State v. Gatewood*, 2021-Ohio-3325, 177 N.E.3d

693, ¶ 52 (1st Dist.), citing *State v. Leach*, 150 Ohio App.3d 567, 2002-Ohio-6654, 782 N.E.2d 631, ¶ 57 (1st Dist.). In order to show cumulative error, the defendant must "demonstrate that a reasonable probability exists that the outcome of the trial would have been different absent the alleged errors." *State v. Williams*, 1st Dist. Hamilton No. C-180291, 2020-Ohio-1228, ¶ 54, citing *State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), paragraph two of the syllabus.

**{¶55}** Here, the trial court erred by admitting H.S.'s testimony regarding uncharged, other acts of sexual abuse, and by permitting an expert witness to vouch for the credibility of the victim. However, the prejudicial impact of these errors was minimal. The testimony regarding the uncharged instances of sexual assault was not lengthy, was elicited in the context of the victim's narrative of years of sexual abuse, and was not materially different in nature from the numerous occasions of sexual assault charged in the indictment. H.S.'s testimony was substantially corroborated by her mother, who was an active participant in much of Mincey's sexual abuse of H.S. Lastly, the improper expert testimony was minimal and the state did not mention it in closing argument.

**{¶56}** Based on the few, insubstantial errors, and the weight of the remaining evidence against Mincey, we determine that Mincey has not shown a "reasonable probability" that the outcome would have been different had none of the otherwise-harmless errors occurred. Thus, the cumulative effect of the identified errors did not deny Mincey his constitutional right to a fair trial. Mincey's fifth assignment of error is overruled.

### IV. Conclusion

**{¶57}** For the foregoing reasons, we affirm the judgment of the trial court.

Judgment affirmed.

**WINKLER** and **BOCK, JJ.**, concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.

